UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON TELLER,<br>       **Plaintiff,**<br>-vs-<br>DANIEL ELSTEIN;<br>TRASON ELM, LLC<br>       **Defendant** | **COMPLAINT**<br><br>Case No. 5:21-cv-314 (BKS/TWD)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jason Teller ("Plaintiff"), by and through his attorneys Davidson Fink LLP, for his Complaint against Defendants Daniel Elstein ("Elstein"), and Trason Elm ("Trason" or "Trason Elm"), alleges upon personal knowledge with respect to itself and its own acts, and upon information and belief with respect to all other matters as follows:

## NATURE OF THE ACTION

1. This is an action by Plaintiff seeks to enforce three contracts between Jason Teller and Defendants, which the parties intended as modification and settlement agreements of debt between Plaintiff and Defendants.

## THE PARTIES

2. Plaintiff Jason Teller is a resident of Florida.

3. Defendant Daniel Elstein is a resident of Onondaga County, New York.

4. Defendant Trason Elm LLC, is a limited liability is a holding company whose primary place of business is located in the State of New York. Trason Elm is in the business of, amongst other things, real estate development, including the financing of real estate projects and acquisitions of the same.

## JURISDICTION AND VENUE

5. The Court has jurisdiction of this action under 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and complete diversity of citizenship exists based upon Plaintiff being a Florida resident and Defendants residing in New York State.

6. Jurisdiction over Trason Elm LLC is proper because its sole member, Daniel Elstein, resides in the Northern District, and because its corporate office is located in the Northern District of New York.

7. Jurisdiction is proper over Daniel Elstein because Daniel Elstein resides and is domiciled in the Northern District of New York.

## FACTUAL BACKGROUND

8. Upon information and belief, Trason is managed, controlled and owned by its sole member, Daniel Elstein. Defendant, through Trason Elm, acted as a lender to Plaintiff corporate entities in connection with a number of real estate development projects, which included, amongst other things, student housing and apartment developments.

9. The parties also partnered in pursuing a number of real estate developments, including, amongst others, large scale multi-unit apartment complexes, mixed use retail and residential developments and a hotel.

10. On or about July 8, 2016, Trason Elm loaned $1,500,000.00 to Buffalo State Ventures, LLC, ("BSV"), which is owned by Plaintiff Jason Teller and Thomas Masaschi, hereinafter ("Masaschi"). Masaschi is a co-owner of the borrower entities discussed in this action with Plaintiff Jason Teller. Masaschi is not a necessary party to this action. **Exhibit A**.

11. The promissory note was executed by Plaintiff as President of DHD Ventures Management Company, Inc. ("DHD") as manager of BSV.

12. On the same date, the same parties entered into a Commercial Loan Agreement, which referenced the promissory note. **Exhibit B**.

13. As collateral security for the loan, DHD pledged its membership interest in DHD Allentown, LLC and DHD Bethlehem, LLC. See **Exhibit C**.

14. The aforementioned Pledge Agreements were amended, and a second note was executed in May of 2017 to secure an additional loan in the amount of $1,800,000.00. **Exhibit D**.

15. The first and second notes had maturity dates of February 2018 and June 2022, respectively.

16. The aforementioned entities own property where ALDI grocery stores are located.

17. Subsequent to the loan, Plaintiff experienced financial difficulties. In response, Defendant Daniel Elstein ("Elstein") offered numerous modifications and extensions, purportedly to allow Plaintiff and his companies to cure their default and settle the outstanding debts to Trason Elm.

18. In violation of all of the three (3) agreements described below, Trason Elm filed suit in New York State against against Buffalo State Ventures, LLC and DHD Ventures, on the debt secured by DHD Allentown and DHD Bethlehem. Jason Teller and Daniel Elstein are not parties to that action. Also in violation of the agreements, Defendant(s) filed suit on a loan

secured by DHD Fountain Hill, a North Carolina entity owned by Plaintiff, and intended to be addressed by the three (3) agreements with Plaintiff, all of which Defendants have breached. .

19. In both instances, the lawsuits filed by Defendant are a direct and intentional violation of the three (3) agreements Plaintiff now seeks to enforce.

## THE FIRST MODIFICATION

20. The first agreement ("First Modification"), dated February 15, 2018, was memorialized in an email sent on behalf of Elstein to Plaintiff. While the agreement drafted by Defendant Elstein bares the name of Teller and Masaschi individually, it was understood by all parties thereto that the First Modification was addressed to pay down the two (2) loans from Trason Elm to BSV, which were personally guaranteed by Plaintiff. (The Court should note that Thomas Masaschi, hereinafter "Masaschi" is a co-owner of the various DHD entities and BSV, along with Plaintiff Jason Teller).

21. As set forth in **Exhibit E,** the First Modification called for an extension of the maturity date on the loans to BSV until the underlying collateral (e.g. the LLCs) were either sold or refinanced, and provided further that said transactions were to occur on or before June 1, 2022. **Exhibit E**.

22. The agreement was proposed, drafted, and signed by Elstein. **Exhibit E**.

23. As consideration for the modification and extension, the First Modification required monthly cash flows from 3 Aldi properties, located in Allentown, Bethlehem, and Fountain Hill, to be remitted to Trason Elm the first of each month. Following the execution of the agreement, Plaintiff, through DHD, made payments to Trason Elm in the identical manner called for in the First Modification. **Exhibit** E, paragraph 5.

24. Elstein and Trason Elm demanded and received payments under the First Modification until January 2021, following summary judgment being awarded to Trason Elm in its lawsuit on the above referenced loans, as discussed below.

25. Elstein and Trason Elm have violated the First Modification by accepting payments thereunder, and then filing suit on the loan, in spite of having agreed to extend the maturity date of same to June 1, 2022. The action was filed by Trason Elm in spite of Elstein and Trason Elm having received in excess of $600,000.00 from the cash flow payments under the First Modification, and a 47.5% interest in a student housing facility near Coastal Carolina University, which had been valued at the time around $28,000,000.00. In total, upon information and belief, Elstein and Trason Elm received $3,000,000.00 in equity in the real estate development.

26. In spite of having received and accepted the consideration from Plaintiff described above, Defendants have refused to perform under the agreement, and as a result, Plaintiff has been damaged in the amount of at least $3,000,000.00.

### THE SETTLEMENT AND RELEASE AGREEMENT

27. On June 11, 2019, Plaintiff Jason Teller and Big Crow Management, a company owned by Teller, entered into a Settlement and Release Agreement ("the SRA") with Elstein, in his individual capacity, and Trason Elm, LLC, the lender of the aforementioned loans. **Exhibit F**. The agreement between Plaintiff and Defendants was intended to pay off Plaintiff's portion of the debt, as expressly agreed to in the document.

28. The SRA called for the full release of Teller (and Big Crow, Teller and his partner Masaschi's corporate entity), from "any and all claims, debts, guaranties…..." up to the effective date of the document. **Exhibit F**.

29. As consideration for the release of Plaintiff, Plaintiff transferred all of his interests in Waxhaw Mill Ventures, LLC ("WMV"), a residential development, to Elstein/Trason Elm, which at the time was worth approximately $16,400,000.00, along with the $1,000,000.00 capital account balanced associated therewith. **Exhibit F**, paragraph 1. Upon information and belief, Elstein and Trason Elm also received an additional $500,000.00 of equity in the subject development.

30. In addition, Plaintiff and Elstein received the Defendants' member's capital account, which contained an additional one million dollars ($1,000,000.00). As set forth in the Agreement, Plaintiff and Elstein will receive an additional one million five hundred thousand dollars ($1,500,000.00) upon the sale or refinancing of the LLCs

31. The parties understood, acknowledged and agreed that these transfers set forth herein would be applied against the subject loans.

32. With respect to paragraph (b) of the SRA, which required Plaintiff to refinance or sell assets owned by DHD Bethlehem, LLC, DHD Allentown, LLC, and/or DHD Fountain Hill, LLC, in spite of his agreement, and in spite of having been transferred Plaintiff's interest in WMV as called for in paragraph (a), Elstein actively prevented Plaintiff from selling or refinancing assets of the three (3) entities referenced in paragraph (b) by commencing a foreclosure proceeding by Trason Elm against BSV and DHD in Onondaga County Supreme Court under Index Number 002400/2020, on or about March 5, 2020, seeking to foreclose the

assets that are the subject of the modification and release agreements herein. See **Exhibit E, F, G**.

33. Elstein chose to file suit on the above referenced loans in spite of having agreed to extend the maturity date on the loan to BSV to June 1, 2022. **Exhibit E**, paragraph 1.

34. Upon information and belief also Elstein also contacted lenders on assets owned by the aforementioned entities and informed them of the lawsuits against the various DHD entities, thus preventing them Plaintiff from re-financing the assets as required by paragraph (b) of the SRA. **Exhibit F**.

35. By actively preventing Plaintiff from re-financing assets of his companies, Elstein and Trason Elm have breached the duly executed SRA agreement.

36. Upon information and belief, Defendants did not apply the transfers from Plaintiff to any debt of Plaintiff or its entities, in violation of the SRA agreement.

37. As a result of the breach, Plaintiff, who signed a personal guaranty on the subject loans, and his companies, have suffered significant financial damages and distress.

38. Moreover, Plaintiff performed under the SRA by transferring his membership interests in the above referenced three (3) DHD entities to Elstein and Trason Elm, as consideration for a release, as described in the SRA. Upon information and belief, none of the consideration received by Defendants has been applied against the subject loans.

39. Instead, Elstein and Trason Elm received the interests from Plaintiff, and have refused to provide a release, or to cooperate with the selling and/or refinancing of DHD's assets, as required by the SRA. **Exhibit F**.

40. Elstein has breached the Settlement and Release Agreement by refusing to perform thereunder, and by filing suit on the debt in spite of Plaintiff's compliance with his obligations under the executed SRA.

41. The above conduct is in keeping with a pattern of behavior by Defendants, wherein Defendants offer purported settlement agreements to Plaintiff involving transfer of assets and/or corporate interests, receive said consideration, and proceed to refuse to perform their obligations under the settlement.

42. As a result of the foregoing, and particularly Defendants' acceptance of the above described consideration as called for in the SRA, and subsequent refusal to release Plaintiff, as promised, Defendants' breach of the SRA has caused Plaintiff damages in an amount to be determined at trial.

## THE ALDI AGREEMENT

43. On October 8, 2019, Elstein prepared yet another modification to the various Agreements regarding the loans from Trason Elm, which he titled "Membership Interest/Aldi Agreement, hereinafter "the Aldi Agreement". **Exhibit G**.

44. This agreement was drafted and proposed by Elstein, and signed by Elstein and Teller. **Exhibit G**.

45. The agreement specifically references the loans to DHD from Trason Elm. The parties understood that the Aldi Agreement was intended to pay down the loan from Trason Elm to BSV, which was personally guaranteed by Teller. **Exhibit G**.

46. The Aldi Agreement explicitly states that its purposed is to "facilitate the repayment of 3.0m". The agreement specifies that 1.5 million of the debt is to be repaid by Plaintiff. **Exhibit G**.

47. In order to facilitate repayment, the agreement required Trason Elm to release the pledge of all the membership interest in the three DHD entities to allow the sale and/or refinance of those assets to generate the $3,000,000.00 to pay on the debt.

48. The release was contingent on Masaschi agreeing to pledge and release his ownership proportion of the total proceeds from a sale of property located at 11 East Avenue to "Daniel Elstein/Trason Elm". The agreement further provided that Elstein has the sole authority to sell the property, and that Plaintiff and Masachi, will sign all documents necessary to close the sale of the property. **Exhibit G**.

49. In spite of Masaschi having been ready and willing to pledge and release his interest in the proceeds of any sale of 111 East Avenue, and in spite of the property having been placed on the market, Elstein sued on the debt that was the subject of the Adli Agreement, as referenced above.

50. Furthermore, Elstein has refused to cooperate with the sale of the property in anyway, in spite of his agreement to do so.

51. The Aldi Agreement specifically provides that of the $3,000,000.00 to be generated under the agreement, half was to be assigned as having been received from Plaintiff Jason Teller, thereby removing any liability he may have had to Elstein.

52.     Upon information and belief, Defendants have regularly, routinely and systematically communicated with first position lenders on Plaintiff's assets, for no reason other than to cause Defendants financial harm and prevent Plaintiff from re-financing.

53.     Plaintiff and his entities have suffered significant financial damages by the refusal of Elstein to perform under the Aldi Agreement, including but not limited to the inability to discharge and/or pay off the debt, devaluation of assets, attorney fees and other damages relating to Elstein's breach.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
(FIRST MODIFICATION)

54.     Plaintiffs repeats, re-alleges and incorporates the factual allegations in paragraphs 1-53 as if fully set forth herein.

55.     Pursuant to the First Modification, Plaintiff agreed to defer maturity of the of the subject loans until December 31, 2021 and June 1, 2022, respectively.

56.     In exchange, Defendants demanded and received the cash flow generated by the LLCs, as well as a 47.5% interest in a real estate development, which at the time was valued at approximately twenty eight million dollars ($28,000,000.00).

57.     As a result of this exchange, Plaintiff received in excess of six hundred thousand dollars ($600,000.00) from the cash flow payments, and received an additional thirteen million dollars ($3,000,000.00) of equity in the subject development.

58.     Plaintiff has complied with his obligations consistent with the First Modification.

59. Upon information and belief, Defendant has failed to account for or apply these amounts realized against the underlying subject loans, in violation of the First Modification.

60. Further, Defendants have engaged in a pattern of predatory action designed to extract further payments from Plaintiff and his entities with no intention of performing under the contract.

61. Defendants by accepting payments and transfers under the First Modification, and then commencing a lawsuit in breach of the First Modification, have caused, and continue to cause Plaintiff damages in the amount of three million six hundred thousand dollars ($3,000,000.00), plus pre and post-judgment interest, together with legal fees and costs and other damages to be determined at trial.

### AS AND FOR A SECOND D CAUSE OF ACTRON
### BREACH OF CONTRACT
(BREACH OF SETTLEMENT AND RELEASE AGREEMENT)

62. Plaintiff repeats, re-alleges and incorporates every allegation set forth in paragraphs 1 through 61 as if set forth fully herein.

63. Pursuant to the SRA executed by and between Plaintiff and one Defendants' members, Defendants released Plaintiff from, including amongst other things, any claims, debts, causes of actions, suits, contracts, agreements or liabilities of any kind, and additionally agreed to forgo commencing any actions, adverse to the interests of the Defendant's member.

64. In exchange for this release, Defendants received a one million ($1,000,000.00) dollar capital account, and also received an ownership interest in a real estate development worth an additional five hundred thousand dollars ($500,000.00).

65. Plaintiff signed the subject loans, as well as the various agreements and

modifications set forth and discussed herein. Defendants' aforementioned lawsuits on the subject debts is directly adverse to that of Plaintiff, the released party.

66. Plaintiff has complied with any and all obligations arising from or associated with the SRA.

67. Defendants have breached the SRA, by, including, but not limited to commencing a lawsuit against the DHD entities and BSV in State Court, and violating the provisions of the First Modification, and the Aldi Agreement.

68. As a result of Defendants' breach of the SRA, Defendants have has caused and continues to cause Defendants to sustain damages in the amount of at least one million dollars five hundred thousand dollars ($1,500,000.00), plus further damages to be determined by the Court, plus pre- and post-judgment, together with legal fees and costs.

## AS AND FOR A THIRD CAUSE OF ACTION
## BREACH OF CONTRACT
(BREACH OF ALDI AGREEMENT)

69. Plaintiff repeats, re-alleges and incorporates every allegation set forth in paragraphs 1 through 68 as if set forth fully herein.

70. Pursuant to the Agreement, executed by Plaintiff, Elstein and Trason Elm, Defendants agreed to release the subject collateral pledge agreement(s) for the purpose of enabling Plaintiff to sell or refinance the assets.

71. Consistent with the First Modification, the Aldi Agreement did not alter the previously agreed to deferment/forbearance period through December 2021 and June 2022, respectively.

72. In exchange for this agreement, upon sale or refinancing of the assets,

Plaintiff agreed to pay Defendants three million dollars ($3,000,000.00).

73. Almost immediately following the execution of the SRA, Defendants and/or others in their employ, interfered with and prevented Plaintiff and his entities from selling or refinancing the subject property, in breach of the SRA, and filing suit on the debt guaranteed by Plaintiff in his individual capacity.

74. As a result of Defendants' breach, Defendants have caused and continue to cause Plaintiff to sustain damages in an amount to be determined at trial, plus pre- and post-judgment interest, together with legal fees and costs.

## AS AND FOR A FOURTH CAUSE OF ACTION
(UNJUST ENRICHMENT)

75. Plaintiff repeats, re-alleges and incorporates every allegation set forth in paragraphs 1 through 74, as if set forth fully herein.

76. Defendants has received substantial financial gains and benefits from the numerous agreements discussed herein.

77. Plaintiff and his entities provided valuable financial benefit to Defendants by providing the transfers of cash and assets to Defendant. Plaintiff reasonably relied upon Defendants' statements both orally, electronically, and as found in the written agreements themselves, that Defendants' would properly credit the transfers against the debt, and perform its obligations under those agreements.

78. These various exchanges were made for the purpose of reducing the amounts of the subject loans, and in consideration for Defendant granting an extension in the time to repay the subject loans through December 2021 and June 2022.

79. Defendants have breached these various agreements by failing to reduce the amount claimed to be owed on the subject loans, and commencing this action in violation of these agreements.

80. Further, the above breaches are part of a pattern of dishonest lending practices by Defendants, by which Defendants have acted in a predatory fashion by drafting and executing purported settlement agreements, only to received consideration in the form of cash and membership interests, and refuse to perform under the agreement or credit Plaintiff or its entities for the consideration received.

81. It would be unjust and unreasonable for Defendants to retain the financial benefit it received at Plaintiff's expense, while Defendants have breached seemingly every agreement it made with Plaintiff.

82. Such fraudulent and predatory behavior is inequitable, and has unjustly enriched Defendants at the expense to the detriment of Plaintiff and his entities.

83. By reason of the forgoing, Defendant has been unjustly enriched at Plaintiff's expense in an amount to be determined at trial, plus pre- and post-judgment interest together with legal fees and costs.

**AS AND FOR A FIFTH CAUSE OF ACTION**
(BREACH OF THE IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING)

84. Plaintiff repeats, re-allege and incorporates every allegation set forth in paragraphs 1 through 83, as if set forth fully herein.

85. Implied in every contract in New York is the covenant that the parties to the contract will exercise good faith and fair dealing in carrying out their contractual obligations.

86. Defendants have acted in bad faith and breached the implied covenant of good faith and fair dealing, by refusing to honor the deferments, modifications and extensions contained in the various agreements discussed herein. Defendants have acted in bad faith through his conduct including efforts to prevent Plaintiff from selling or refinancing the LLCs at issue herein, and likewise interfering with and disrupting Plaintiff's position and relationship with their first position lender in connection with the LLCs.

87. On account of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be determine at trial, plus pre- and post-judgment interest, together with legal fees and costs.

### AS AND FOR A SIXTH CAUSE OF ACTION
(FRAUD AND FRAUDULENT INDUCEMENT)

88. Plaintiff repeats, re-allege and incorporates every allegation set forth in paragraphs 1 through 87, as if set forth fully herein.

89. Defendants fraudulently induced Plaintiff to enter into the various agreement discussed herein, pursuant to which millions of dollars, in both money and assets, were transferred to Defendants, by continually representing that Defendants would extend the time to repay the amount claimed to be owed on the subject loans, and ensuring that the amounts transferred would be applied to and reduce the subject loans.

90. Defendants made false statements and representations, as well as drafted the Modifications/Agreements, in 2018 and 2019, regarding its intention to defer, modify and extend the time with which to pay the amounts allegedly due under the subject loans.

91. These statements and representations were made by Defendants and their

employee, with the intent to fraudulently induce Plaintiff into entering into the agreements, even though Defendants never intended to carry out their obligations thereunder.

92. Upon information and belief, Defendants' statement and representations, including those set forth in the agreements discussed herein, were false when made, as Defendants never intended to abide by these agreements, which have been breached by Defendants' actions and through the commencement of this action.

93. As a result of Defendants' fraudulent conduct, Plaintiff has sustained damages in an amount to be determined at trial, plus pre- and post-judgment interest, together with legal fees and costs.

### SEVENTH CAUSE OF ACTION
(Punitive Damages)

94. Plaintiff repeats and re-alleges each and every factual allegation set forth in paragraphs 1-93, as though fully set forth herein.

95. Defendants, aware of Plaintiff's economic duress, drafted and presented the three (3) separate agreements which Defendants lead Plaintiff to believe would provide a reasonable settlement of the debt between the parties.

96. Each time, Defendants fraudulently induced Plaintiff into transferring millions of dollars in cash and assets to Defendants.

97. In each instance, Defendants accepted and retained the consideration provided by Plaintiff in the agreement, only to refuse to extend the bargained for consideration in return to Plaintiff, and actively frustrate any attempts by Plaintiff to proceed under the agreements, as agreed to by the parties.

98. Defendants practice of offering purported settlements, modifications, and release agreements to Plaintiff in order to extract valuable assets and cash from Plaintiff, with no intention of properly crediting the transfers or releasing Plaintiff from his obligations to Defendants sets forth a clear, frivolous, bad faith and predatory course of conduct.

99. Defendants' pattern of behavior is intentional, arbitrary, unreasonable, and has caused substantial financial harm to Plaintiff, as set forth above.

100. As a result of the predatory and dishonest course of conduct set forth herein, Defendants are liable to Plaintiff for punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands 1.) judgment on the Complaint for compensatory damages in the amount of $4,500,000.00 plus additional damages to be determined at trial; and (2) an order directing specific performance of the three contracts which are the subject of this action; and (3) and award of punitive damages in an amount to be determined at trial.

Dated: March 19, 2021                                     DAVIDSON FINK LLP

                                                          Richard N. Franco, Esq.
                                                          *Attorneys for Plaintiff*
                                                          28 East Main Street, Suite 1700
                                                          Rochester, New York 14614
                                                          (585) 546-6448